IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL L.,[1] | ) |
| Plaintiff, | ) ) ) |
| | ) No. 21 C 1757 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | ) ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Daniel L.'s application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 21, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [dkt. 26, Def.'s Mot.] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by his first name and the first initial of his last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

**BACKGROUND**

**I.     Procedural History**

On November 22, 2017, Plaintiff filed a claim for DIB, alleging disability beginning October 30, 2016, due to disc protrusions and pain in his right hip. [Dkt. 14-1, R. 167-68, 196-206.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 52-61, 63-74.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 9, 2019. [R. 29-51.] Plaintiff did not personally appear at the hearing because he had begun working again, but his non-attorney representative, James Miller, appeared on his behalf and requested, in light of Plaintiff's return to work, that Plaintiff's claim be considered for a closed period of disability between the dates of October 30, 2016, and September 10, 2019. [R. 29-51.] Medical expert Dr. Nitin Paul Dhiman testified [R. 35-44] and vocational expert ("VE") James Radke also testified, [R. 44-49.] On December 27, 2019, the ALJ denied Plaintiff's claim for benefits, finding that he was not disabled under the Social Security Act and had not been during the closed period of October 30, 2016, to September 10, 2019. [R. 11-28.] The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 1-6.]

**II.    The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 15-16.] The ALJ found at step one that Plaintiff had engaged in some substantial gainful activity during his alleged period of disability (October 30, 2016, to September 10, 2019). [R. 16.] Specifically, the ALJ found that Plaintiff had returned to work and was engaged in substantial gainful activity from May 2017 to August 2017. [R. 16.] Rather than terminating the analysis at that point, however, the ALJ continued through the analysis

to make an alternative finding that, even if Plaintiff had not been engaged in substantial gainful activity during that period, the record also did not support a finding of disability. [R. 16-17.]

At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease (DDD) lumbar spine with radiculopathy; right hip labral tear and degenerative disc disease (DJD) status-post repair; and obesity. [R. 17.] The ALJ further noted Plaintiff's diagnosis of mild degenerative changes of the thoracic and lumbar spine, but concluded that they were not severe because there was no evidence of continuous complaints related to those impairments. [R. 17.] The ALJ also noted that, even if the degenerative changes of the thoracic and cervical spine *were* severe, the limitations caused by those impairments would not cause Plaintiff's residual functional capacity to change or become more limited than the RFC assessed by the ALJ. [R. 17.]

The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"), [R. 17], and indeed, that Plaintiff's representative conceded as much at the hearing, [R. 32.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following additional limitations:

> occasionally climb ladders, ropes or scaffolds and occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; have occasional exposure to vibrations and hazards such as walking on uneven terrain or the ground, unprotected heights, and operation of heavy machinery and commercial driving.

[R. 17-18.] At step four, the ALJ concluded that Plaintiff would not able to perform his past relevant work as a construction electrician. [R. 23.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act. [R. 23-24.]

3

**DISCUSSION**

**I.     Judicial Review**

Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To

4

determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837; *see also Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

II.    **Analysis**

Plaintiff argues that the ALJ: (1) failed to support the RFC assessment with substantial evidence because the ALJ relied on a treating physician's opinion given after his functioning improved while ignoring medical opinions given prior to his improvement, and (2) improperly

5

discounted Plaintiff's allegations regarding the nature, severity, and limiting effects of his subjective symptoms. [Dkt. 21, Pl.'s Mem. at 6-15; dkt. 30, Pl.'s Reply at 1-7.] In support of his second argument, Plaintiff challenges the ALJ's finding that he had been engaged in a period of substantial gainful employment, arguing that this period should be treated as an unsuccessful work attempt instead. [R. 12-13.] After reviewing the record and the briefs submitted by the parties, this Court agrees that the ALJ failed to analyze the April 2018 medical opinion of Dr. Troy, Plaintiff's treating physician. Because this failure alone warrants remand, the Court does not reach Plaintiff's additional arguments.

\* \* \* \* \* \*

As an initial matter, the Court agrees with Plaintiff that the ALJ erred in finding at Step One that Plaintiff had been engaged in substantial gainful activity when he briefly returned to work from May 2017 to August 2017. [R. 16.] As Plaintiff points out, the Agency found at the initial level of adjudication that this period would be considered an "unsuccessful work attempt" rather than "substantial gainful activity," despite that the wages he earned were over the threshold to be considered "substantial gainful activity." [R. 220.] Under the Agency's regulations, "earnings from an unsuccessful work attempt will not show that you are able to do substantial gainful activity," 20 C.F.R. §404.1574(a)(1). While there was some confusion about this at the administrative hearing, [R. 33-34], Plaintiff's representative filed a post-hearing memorandum explaining that the benefits administrator (at the initial level of the Agency's review) had found the period from May to August 2017 to be an unsuccessful work attempt. [R. 283-84.] Despite this clarification, the ALJ still found it to be substantial gainful employment. [R. 16.]

Notably, the Commissioner does not argue that the ALJ was correct in her Step One finding, but rather argues in response that the ALJ still was permitted to consider Plaintiff's work

attempt as part of the subjective symptom evaluation at Step Five. [Dkt. 27 at 6-7.] Because the ALJ did not end the analysis at Step One, but rather continued to provide an alternative analysis that the record did not otherwise support a finding of disability, the Court would find the ALJ's erroneous conclusion at Step One to be harmless, if not for the other issue requiring remand, discussed below. *See Cooley v. Berryhill*, 738 F. App'x 877, 881 (7th Cir. 2018) (concluding that ALJ's error in determining claimant could perform past work was harmless where ALJ "reached the same not-disabled determination under [a non-erroneous] alternate analysis") (*citing Diaz v. Chater,* 55 F.3d 300, 307 (7th Cir. 1995)).

\* \* \* \* \* \*

Plaintiff next argues that the ALJ failed to acknowledge, consider, or weigh opinions from multiple medical sources, specifically the following five statements:

- Dr. Karalkovic's February 2018 statement that claimant's pain "does not allow him to go back to work" [R. 491].

- Dr. Troy's April 2018 letter requesting that Plaintiff be excused from jury duty because Plaintiff was "unable to sit, stand, [or] walk for extended periods of time" [R. 1057];

- Physician Assistant Adam Mietus's May and June 2018 letters sent to Monica Roche that Plaintiff was to "remain off work" [R. 1051, 1056];

- Dr. Troy's February 2019 letter to an unspecified recipient stating that Plaintiff's work status had not changed [R. 1227]; and

- Dr. Watson's March and May 2019 letters to an unspecified recipient stating that Plaintiff was to "remain off work" and that his "work status had not changed" [R. 1218, 1219, 1224].

[Dkt. 21 at 7-8.] Plaintiff further argues that these medical opinions are consistent with one another as well as: (1) his subjective reports during the same time period that his pain was aggravated by any activity, including prolonged sitting, R. 331, 339, 378, 387, 632, 727, 735, 808, 944, 949, 951, 975; (2) his doctors' recommendations that he only engage in "activity as tolerated," R. 480, 514,

7

722, 1046; (3) the fact that Plaintiff had repeatedly been assessed with "activity intolerance," R. 671, 683-84, 869, 898; (4) Plaintiff's failed attempt to return to work in 2017, R. 667, 803, 864, 991; and (5) the fact that Plaintiff's pain was unresponsive to pain medication, activity modification, physical therapy, injections, nerve blocks, and nerve ablations. R. 667, 680, 685, 938, 1006, 1007, 1009, 1011, 1044, 1048, 1052, 1054, 1211.

The Commissioner counters that the statements from Plaintiff's medical providers listed above do not fall within the definition of "medical opinion" under the Agency's regulations, and thus the ALJ did not have to discuss their persuasiveness. [Dkt. 27 at 5-6.] While the Commissioner is likely correct regarding most of these statements, the Court finds that the April 2018 letter from Dr. Troy is a "medical opinion" under the Agency's regulations, and thus the ALJ's failure to discuss the persuasiveness of that medical opinion requires remand.

Under the Agency's regulations, a "medical opinion" is defined as "a statement from a medical source about what [the claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions" in certain abilities, including the claimant's "ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. § 404.1513(a)(2)(i). The Commissioner argues that the medical treater statements that Plaintiff points to are not medical opinions but rather are conclusions on issues reserved to the Commissioner, citing 20 C.F.R. § 404.1520b(c)(3)(i), which lists, "[s]tatements that you are or are not . . . able to work, or able to perform regular or continuing work" among listed evidence that is "inherently neither valuable nor persuasive" and which requires no analysis under the regulations.

8

The Court agrees that the letters dated February 2018, May 2018, June 2018, February 2019, March 2019, and May 2019 are all conclusory statements that say nothing more than that Plaintiff was unable to work, and therefore the ALJ was not required to analyze these statements. 20 C.F.R. § 404.1520b(c)(3)(i); *see also Janisha C. v. Kijakazi,* No. 22-CV-00381, 2023 WL 5017943, at *5 (N.D. Ill. Aug. 7, 2023) (ALJ correctly disregarded opinion of pulmonologist that Plaintiff "frequently is unable to work or engage in normal activities when her asthma is flared up" because it was simply a conclusion on an issue reserved to the Commissioner); *Jill A. W. v. Kijakazi,* No. 20 C 3854, 2022 WL 225879, at *5 (N.D. Ill. Jan. 26, 2022), *amended in part, adhered to in part,* No. 20 C 3854, 2023 WL 2954919 (N.D. Ill. Apr. 14, 2023) (ALJ not obligated to justify their rejection of doctors' statements that Plaintiff was unable to perform part-time work beyond noting that this was a conclusion reserved to the Commissioner); *Dustane B. v. Kijakazi,* No. 1:21-CV-446-JVB, 2023 WL 2706640, at *4 (N.D. Ind. Mar. 30, 2023) (ALJ need not provide any analysis about how they considered letter from doctor stating "at this time, due to multiple mental and physical health problems, [Plaintiff] is unable to work" and inviting the reader to contact medical records at the hospital for any specific information).

On the other hand, the April 2018 letter by Plaintiff's treating physician, Dr. Troy, stated that Plaintiff was unable to sit, stand, or walk for extended periods, which is not a conclusion about whether Plaintiff was able to work but rather an evaluation of Plaintiff's limitations caused by his impairments. It is therefore a "medical opinion" within the regulation definition. *See* 20 C.F.R. §404.1513(a)(2)(i) (defining a "medical opinion" as a statement about a claimant's "ability to perform physical demands of work activities, such as sitting, standing, walking …".). The Commissioner does not specifically address this statement or acknowledge its distinction from the other statements cited by Plaintiff; rather, the Commissioner simply argues that *all* the statements

9

cited to by Plaintiff are conclusions and therefore not within the definition of a "medical opinion." [Dkt. 27 at 5-6.]

As Plaintiff's claim for benefits was filed after March 17, 2017, the evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under that regulation, the opinions of treating physicians are not entitled to special deference or controlling weight. Rather, opinions from any medical source are evaluated against certain factors, including 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of time the source has treated the claimant, the frequency of examinations, and the purpose and extent of the treatment relationship, and whether the relationship was an examining one; 4) the source's specialization; and 5) other factors. 20 C.F.R. § 404.1520c. The "most important factors"—and the only factors that the ALJ is required to discuss in her decision—are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

While the ALJ did discuss Dr. Troy's August 2019 opinion that Plaintiff could *return* to work in a "desk type position" doing "sedentary" work, [R. 21, *referencing* R. 1254-55], the ALJ did not discuss the prior April 2018 opinion that, at that time, Dr. Troy believed Plaintiff could not even perform the sedentary task of jury duty—critically for the analysis here—*because* of his inability to sit, stand, or walk for extended periods. [R. 1057.] Indeed, the entirety of the ALJ's discussion of Dr. Troy's opinion is as follows:

10

> In August 2019, the claimant was doing very well during his follow up visit for his spinal cord stimulator. According to the claimant's treating physician, Daniel Troy, M.D., the claimant is capable of returning to work in a desk position or sedentary exertional work (10F). The undersigned finds the opinion of Dr. Troy to be consistent with the other evidence of record. However, Dr. Troy does not give any specific function-by-function limitations the claimant might have. Nonetheless, the function-by-function limitations discussed herein are not inconsistent with sedentary exertion work. Thus, in consideration of the medical specialty, the treating and examination relationship with the claimant, it has been determined that the opinions of Dr. Troy is [sic] persuasive as it is consistent with the other evidence record.

[R. 21.] In stating that Dr. Troy had not given "any specific function-by-function limitations the claimant might have," the ALJ evidently missed or ignored the functional limitations Dr. Troy opined to in April 2018. Moreover, the ALJ does not reconcile the finding that Dr. Troy's August 2019 opinion, that Plaintiff was able to *return* to sedentary work, was persuasive, with a finding that Plaintiff could perform sedentary work throughout the *whole* period from October 30, 2016, to September 10, 2019. Most importantly, as the ALJ did not even mention the April 2018 opinion, the ALJ also did not address what weight, if any, she was giving to that opinion, nor did she address the supportability or consistency of that opinion with the other record evidence, as required by the regulations. 20 C.F.R. § 404.1520c.

Because the ALJ's failure to provide any explanation or analysis of Dr. Troy's April 2018 medical opinion alone requires remand, the Court does not reach Plaintiff's other arguments regarding the ALJ's assessment of Plaintiff's subjective symptoms.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 21] is granted, and the Commissioner's motion for summary judgment [dkt. 26] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

11

**SO ORDERED.**

Date: 9/20/23

_____
BETH W. JANTZ
United States Magistrate Judge